# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

MARTIN E. HUGHES,            )
                                 )
       Plaintiff,            )
                                 )
vs.                             )        No. 1:15-cv-1306-JDT-cgc
                                 )
TENNESSEE DEPARTMENT OF     )
CORRECTION, ET AL.,         )
                                 )
       Defendants.       )

---

## ORDER DISMISSING COMPLAINT,
## CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
## NOTIFYING PLAINTIFF OF APPELLATE FILING FEE AND
## NOTIFYING PLAINTIFF OF FILING RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

---

On December 14, 2015, Plaintiff Martin E. Hughes ("Hughes"), an inmate who is presently confined at the Turney Center Industrial Complex in Only, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion asking leave to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) The complaint concerns his former incarceration at both the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee and the Hardeman County Correctional Facility ("HCCF"), in Whiteville, Tennessee. In an order issued December 16, 2015, U.S. District Judge John T. Nixon granted leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), and transferred the matter to this court, where venue is proper. (ECF No. 3.) The Clerk shall record the Defendants as the Tennessee Department of Correction ("TDOC"); former TDOC Commissioner Derrick Schofield; Corrections Corporation of America ("CCA"); HCCF Warden Grady Perry; Southern

Health Partners; Dr. Kenneth Mathews; BCCX Sergeant ("Sgt.") Jesse Wyatt; BCCX Lieutenant ("Lt.") Ray Payne; BCCX AWO Darren Settles; HCCF AWS Bryon Ponds; CC Ms. First Name Unknown ("FNU") Henson; CM Tameka Walker; Health Administrator Jill Miller; Dr. FNU Dietz; Dr. FNU Pearson; TDOC Compliance Officer Darnell Peterson; Nurse Mrs. FNU Hughes; Nurse Mrs. FNU Pettigrew; Nurse Mrs. FNU Harris; and Nurse Mrs. FNU Gann.

## I. THE COMPLAINT

Hughes alleges that on April 28, 2015, upon his arrival at the BCCX, all of his personal property including clothing, personal and legal mail, hygiene products, stamps, legal envelopes as well as legal evidence, medicine and assorted commissary items were taken from him. (Compl. at 5, ECF No. 1.)  The staff at intake was a sergeant-in-charge along with three other people.  (*Id.*)  While being searched, Hughes was told to strip completely and throw away his clothing.  (*Id.*)  Hughes verbally objected and told the Correctional Officers ("C/Os") that he would like to keep his undergarments, but he was refused and threatened with punishment if he did not comply.  (*Id.*)  Most of Hughes's property was thrown in the trash, including his medicine.  (*Id.*)  Hughes got upset because he allegedly needed the medicine for a serious leg and knee injury and because the male C/Os tore up and threw away some of his legal property, some of which was discovery and evidence in his upcoming legal case.  (*Id.*)

Because the C/Os told Hughes they were following policy set by Defendant Schofield, Hughes filed a grievance against the officers and the process used.  (*Id.* at 6.)  Hughes further alleges that Defendant Payne came to Hughes to investigate and agreed that Hughes's rights were violated; however, there was nothing he could do because the property was gone.  (*Id.*) After Hughes told Defendant Payne that some of the legal material was for his upcoming criminal case, Defendant Payne told Hughes that he would get back to him before his trial and

that he would have something in writing for the courts because of the materials lost by the C/Os at intake and by Defendant Wyatt.[1] (*Id.*) Hughes waited and filed several requests and grievances to have a response before his attorney arrived for trial preparation, but Hughes was shipped to HCCF on June 15, 2015. (*Id.*)

Hughes alleges that on June 15, 2015, during transport by TDOC from the BCCX to Nashville to meet a CCA bus, the bus drivers from both of the buses refused to let him eat or drink on the buses. (*Id.*) Hughes continues that when he was permitted to eat, he was walked between both buses and required to eat on his knees while chained around his ankles and his waist to his hands. (*Id.*) As a result, Hughes had to "choke down" his lunch off the ground while being told not to drop anything or he would have to clean the whole parking lot. (*Id.*) Hughes was not allowed to be uncuffed to use the bathroom resulting in Hughes going to the bathroom on himself once he was returned to the bus. (*Id.*)

Hughes further alleges that since he has been transferred by TDOC to the HCCF he has been denied adequate medical care, proper bedding, properly prepared food, basic clothing, freedom of religion, and the right to challenge these conditions; he also alleges he has been subjected to discrimination due to his race or color. (*Id.* at 7.) In detailing the allegations about inadequate medical care, Hughes alleges that he has had a serious right leg/knee injury since he was attacked and assaulted in his home on March 2, 2014. (*Id.*) Hughes states that his family, FNP Margean Clements of Takoma Medical Associates, and Takoma Hospital have provided his medical records showing the injury to his leg. (*Id.*) Hughes alleges that the repeated denial of medical care has led to a permanent limp on his right leg. (*Id.*) Hughes contends that Defendants Pearson, Hughes, Gann, Pettigrew and Harris told him that TDOC policies will not

---

[1] The Court surmises that Defendant Wyatt may have been the "Sgt. in charge" while Hughes's property was being taken and thrown away upon his arrival at the BCCX. (*Id.* at 5.)

allow him any help on his injury. (*Id.*) Further, Defendant Dietz saw him in early November and informed Hughes that medical staff would not be providing him with Naproxen any longer due to costs. (*Id.*) Hughes has not been allowed to see anyone in medical since November while his condition has gotten worse. (*Id.*)

Hughes alleges that his living conditions are unconstitutional because he was given a very thin mat with holes in it to sleep on and because basic clothing and laundry bags have not been made available to him. (*Id.*at 8.) Hughes contends that the items have been withheld from him due to his race and color. (*Id.*) Hughes submitted several requests and grievances and has had office visits and conversations with Defendant Walker, who, Hughes alleges, has authority over his needs and security and is the only person with whom he is supposed to address his needs. (*Id.*) Hughes contends that Defendant Walker has not only ignored his request, but she has repeatedly fulfilled other, similar requests made by inmates of opposite color. (*Id.*)

Similarly, Hughes alleges that the policy regarding how to obtain a pass to go to the church of your choice is a "sham," and the named Defendants do not follow their own policies. (*Id.*) Hughes contends the staff members manipulate the requests and grievances due to their hidden agenda of being prejudiced towards white people and Christians. (*Id.*)

Additionally, Hughes alleges that the classification system at BCCX, governed by TDOC policy, is unconstitutional. (*Id.* at 9.) Hughes contends that he was told during a hearing for classification status while at BCCX that he could appeal any decision arising out of that hearing within forty-five days regarding issues such as institutional placement, custody level, and other TDOC status outcomes. (*Id*) However, Hughes asserts that classification is not final until you reach your institutional placement; therefore, he contends the forty-five day period for appeal should not begin until you know exactly where you are going. (*Id.*) Hughes further contends

that he tried to appeal his decision of institutional placement from the hearing at BCCX, but because the facility did not answer his requests, he was denied the right to appeal. (*Id.*) Hughes argues that there was never a good reason by TDOC to send him far away from his attorney, to a place where he had to be transported to and from trial, and where all of his property, both legal and personal, was lost. (*Id.*)

Hughes also alleges that Defendant Perry, who, Hughes contends, had a duty to oversee Hughes's safety and well-being at HCCF, was negligent by providing no way to challenge unconstitutional acts by staff and by refusing to correct conditions after personal conversations with Hughes. (*Id.* at 10.) Hughes alleges that Defendant Ponds "continuously has me locked down sometimes for 24 hrs a day 7 days a week for no reason other than other inmates breaking a rule" and without providing a disciplinary hearing. (*Id.*) Hughes contends he was locked down during a "very critical" time with regard to his post-trial appeal rights and missed "very serious timely motions causing [Hughes] irreparable harm." (*Id.*) Additionally, Hughes alleges that Defendant Henson is refusing to change Hughes to minimum security, which could get him closer to the appellate court and his new attorney as well as allowing him to earn credits towards reducing his sentence. (*Id.*) Similarly, Defendants Miller and Peterson allegedly are mistreating Hughes by knowingly refusing his rights on medical and other "serious issues" through their failure to comply with TDOC policies. (*Id.*)

Hughes contends that since he was sentenced to TDOC, if TDOC puts him in a CCA facility, then it is TDOC's responsibility to insure the CCA is not mistreating people. (*Id.* at 11.) Further, he alleges that Defendant Schofield enacted polices and allowed for the enforcement of unconstitutional polices and customs which require people like him, who have medical disabilities, to stand at attention, to make their beds like in the military, to be subjected to the

hardships of military style treatments of tier management, and to receive punishments for not performing tasks which are harder for medically challenged inmates. (*Id.*) Hughes alleges that he is being mistreated by the named Defendants and that he is in fear of retaliation from filing this suit. (*Id.*) He contends that he has tried to "every single way possible" to resolve these issues and now he cannot walk on his right leg and is having legal troubles because he is housed so far away from his trial. (*Id.*)

Hughes seeks preliminary and injunctive relief requiring him to be transferred to another facility and to be provided with medical care and mental health counseling; reimbursement for the loss of his property; compensatory and punitive damages; and an investigation into the mistreatment against him. (*Id.* at 12.)

In an amendment to his complaint filed on January 21, 2016, Hughes alleges that his First Amendment right of access to the courts has been violated due to inadequate help and time and other restrictions which caused him to miss his deadline to submit a motion for a new trial in an ongoing case in Hawkins County Criminal Court, No. 14cr128. (ECF No. 8 at 1.) Hughes again reiterates allegations from the complaint, but adds that he is being denied medicines for his Hepatitis C. (*Id.*) Hughes further reiterates his request to be transferred to a "proper facility for [his] medical needs and safety too." (*Id.* at 3.)

In a second amendment to his complaint filed on February 12, 2016, Hughes provides additional detail to previously made allegations. (ECF No. 9.) Hughes alleges that his "criminal case has been prejudiced against him causing damages, and in three other cases as well" because during lockdowns, commenced by Defendant Ponds for no penological justification, Hughes was not allowed access to the law library and outgoing mail had to be stuck on the locked cell door at night. (*Id.* at 1.) On two occasions mail was not sent out, but was rather found in the trash by

first shift officers. (*Id.*) Hughes asserts that he has suffered "serious harm in [his] cases" because his outgoing mail has been thrown away, he has had inadequate access to the library, and he has received inadequate assistance from the six legal aids assigned to the HCCF. (*Id.*)

Hughes contends that his access to the grievance process has been denied and purposely manipulated by Defendants Henson, Miller, and Walker; however, every named Defendant is allegedly culpable because they knowingly allow the mistreatment. (*Id.* at 2.) Hughes further alleges that he continues to be denied church services; even though Defendant Burns stated she would investigate these issues, nothing was ever done. (*Id.*) Hughes contends he has suffered retaliation for filing his complaints such as threats, shakedowns, and punishments without disciplinary infractions. (*Id.*) Hughes further alleges that Defendant Peterson, who is the TDOC compliance officer, will not do his job in forcing HCCF to adhere to TDOC policies and does not reply to requests and grievances. (*Id.* at 3.) Hughes has tried to challenge trust fund deductions, which start with requests to Defendant Perry, but Perry refuses to comply. (*Id.*) Hughes alleges poor cell conditions including being forced to eat during lockdowns in nasty cells around fecal and urine matter, leaking toilets, and sinks without sanitary stands or tables to eat on, and being denied clothing exchanges, which allegedly are not denied to black inmates. (*Id.*)

## II. ANALYSIS

A.  <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.      § 1983 Claim

Hughes filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such

officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendants Southern Health Partners and Mathews. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Claims against TDOC are construed as claims against the State of Tennessee. Plaintiff cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By

its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The complaint does not assert a valid claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Hughes suffered any injury because of any specific unconstitutional policy or custom of CCA.

Hughes claims that upon his arrival at BCCX his personal property was thrown away. Claims for deprivation of property are not actionable under § 1983 if adequate state remedies are available to redress the deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Hudson v.*

*Palmer*, 468 U.S. 517 (1984); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005); *see also Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985). Plaintiff is entitled to file a claim with the Tennessee Claims Commission or to sue the Defendants, or any other responsible person, in state court.

Although Hughes alleges that he has been discriminated against, he does not have a valid equal protection claim against any Defendant. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Most Equal Protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). Although the complaint alleges that Plaintiff has been discriminated against by the Defendants because of his race (white) and his religion (Christian), his allegations are merely conclusory. He does not identify any specific inmate of a different race or religion who was treated differently under the same circumstances.

Hughes claims that he has had legal materials thrown away, been denied access to legal research, assistance, aid and the law library. However, the complaint does not assert a valid claim for denial of Hughes's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal

papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). While Hughes does provide exhibits showing that his motion for new trial in his state-court criminal case was denied, the motion was denied not only because it was untimely but also because it was moot since Hughes had already filed a notice of appeal in the case which had been accepted by the Tennessee Court of Criminal Appeals. (ECF No. 9-1 at 1-2.) Additionally, although Hughes apparently also blamed the destruction of his legal documents for a delay in obtaining service in a civil rights action he filed in the U.S. District Court for the Eastern District of Tennessee, he has submitted a copy of an order indicating that U.S. District Judge Ronnie Greer found that he had shown good cause for the delay and stating

that the remaining defendant in that case had been served. (*Id.* at 3.) Therefore, Hughes has failed to allege that the outcome of either his criminal case or his civil case was affected by his inability to timely file the documents in question.

The complaint does not adequately allege a First Amendment claim arising from the alleged denial of Plaintiff's right to practice religion. While the complaint states that Hughes continues to be denied leave to attend church services, it fails to identify that any specific Defendant who denied him the ability to do so.

Defendant Schofield is sued as a supervisor. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendants Schofield, through his own actions, violated Plaintiff's rights.

Hughes has allegations against Defendants Payne, Walker, Perry, Henson, Miller, Walker, and Burns for failure to properly address his grievances. Inmates do not have a right under the Due Process Clause to an effective grievance mechanism. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Smith v.Corr. Corp. of Am.*, 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); *Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 5328577, at *2 (W.D. Mich. Sept. 11, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure.") (report and recommendation), *adopted*, 2007 WL 3036493 (W.D. Mich. Oct. 16, 2007); *Mackey v. Carberry*, No. 2:07-cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007) (report and recommendation adopted as opinion of the Court); *Holloway v. Drew*, No. 2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007) (report and recommendation); *Robertson v. Montgomery Cnty.*, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the grievance procedure."); *Robinson v. Hastings*, 2006 WL 950185, at *4.[2]

Further, the participation of any of the aforementioned in processing or denying Hughes's grievances cannot in itself constitute sufficient personal involvement to state a claim of constitutional dimension. *Simpson v. Overton*, 79 F. App'x. 117, 2003 WL 22435653 (6th Cir. 2003); *see also Martin v. Harvey*, 14 F. App'x. 307, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against a defendant for "a mere failure to act" based

_____

[2] *See also* 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.").

upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28.

Hughes has no valid claim against Defendants for causing him to be held at HCCF or for being placed in lockdown.  In general, an inmate does not have a liberty interest in a particular prison, housing assignment, or security classification or in freedom from segregation.  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986).  *See  also Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life");  *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013); *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("Ten days in lock up, the loss of package privileges, and a $4.00 fine do not constitute an atypical and significant hardship in the context of prison life." (quoting *Sandin*, 515 U.S. at 484)).  Further, the Court has no discretion to permit or prohibit Hughes's transfer to another facility.

Hughes alleges in his second amended document that he has suffered retaliation. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements:  (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir.

2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037. In this case, Hughes does not specify any retaliatory actions that were taken by any named Defendants. Therefore, he has failed to state a claim for retaliation.

Hughes complains about being denied medical treatment and also about the general conditions at HCCF as well as during his transfer from BCCX to HCCF. For a convicted prisoner such as Hughes, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*., at 106.

Within the context of *Estelle* claims, the objective component requires that the medical need be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in *Farmer v. Brennan*, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id*. 511 U.S. at 835-36.

Hughes claims that his medicine was thrown away, that Defendants Pearson, Hughes, Gann, Pettigrew, and Harris told him polices would not allow help on his injury, that Defendant Dietz stated he would no longer be provided Naproxen, and adds that he is being denied medicines for his Hepatitis C. Hughes never provides a description of his leg injury, but does include a letter from TDOC which provides documentation that Hughes received an exam at which time he was able to get up on the exam table and showed no signed of swelling, deformity or redness, and was verbally abusive causing the exam to end early. (Motion for Temporary Restraining Order at 5, ECF No. 12.) Thus, Hughes fails to provide allegations, other than conclusory statements, that Defendants were deliberately indifferent to a serious medical need.

With regard to Hughes's various claims regarding general jail conditions, in order to satisfy the objective component of an Eighth Amendment claim, he must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation marks omitted); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("To succeed in an Eighth Amendment challenge, [a prisoner] must establish that . . . a single, identifiable necessity of civilized human existence is being denied . . . ."). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all

> prison conditions are a seamless web for Eighth Amendment purposes. Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted); *see also Thompson*, 29 F.3d at 242 ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1294 (6th Cir. 1989) (same).

Hughes does not allege that any named Defendant was personally responsible for the jail conditions of which he complains. Furthermore, Hughes fails to allege that he suffered any harm as a result of such conditions. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Specifically regarding the treatment he received during transport between BCCX and Nashville, Hughes complains that we was required to eat while handcuffed and was forced to urinate on himself because they would not uncuff him to use the bathroom. (Compl. at 6, ECF No. 1.) However, the bus drivers are not named as defendants. In addition, the fact that Hughes was, on one occasion, required to eat while handcuffed and not allowed to go to the bathroom does not rise to the level of an Eighth Amendment violation.

For all of the foregoing reasons, Hughes's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted. The motions for injunctive relief (ECF Nos. 10 & 12) will be denied as moot.

## III.  STANDARD FOR LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944,

951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that leave to amend is not warranted.

## IV. CONCLUSION

The Court DISMISSES Hughes's complaint as to the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Hughes's motions for injunctive relief (ECF Nos. 10 &12) are DENIED. Leave to Amend is also DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It

would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the fourth dismissal of one of his cases as frivolous or for failure to state a claim.[3] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

---

[3] *See Hughes v. City of Rogersville*, No. 2:15-cv-302-JRG-MCLC (E.D. Tenn. Nov. 15, 2016) (dismissed for failure to state a claim), *appeal docketed*, No. 15-6343 (6th Cir. Dec. 7, 2015); *Hughes v. Hamblen Co. Sheriff's Dep't*, No. 2:14-cv-00335-JRG-MCLC (E.D. Tenn. May 23, 2016) (dismissed for failure to state a claim), *appeal dismissed*, No. 16-5797 (6th Cir.

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  Consequently, Plaintiff is now barred from filing any further actions *in forma pauperis* while he is a prisoner within the meaning of 28 U.S.C. § 1915(h) unless he is in imminent danger of serious physical injury.  Therefore, if any civil action filed by Plaintiff while he is incarcerated is not accompanied either by the entire civil filing fee or by allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury, the complaint will be filed, but Plaintiff will be required to remit the full civil filing fee.  If he fails to do so, the case will be dismissed, and the filing fee will be assessed from his inmate trust account without regard to the installment procedures of 28 U.S.C. §§ 1915(a)-(b).

Plaintiff is cautioned that, if he attempts to evade the § 1915(g) restriction by filing actions in other jurisdictions that are then transferred or removed to this district, the Court may impose a monetary sanction in the full amount of the civil filing fee.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

July 21, 2016); and *Hughes v. Rogersville Police Dep't*, 2:No. 14-cv-171-JRG-DHI (E.D. Tenn. Nov. 25, 2014) (dismissed as frivolous).